## 11001

### STATE v. CULBREATH

#### (113 S. E. 476)

Homicide—Evidence Held Insufficient to Warrant Conviction of Murder.—In a prosecution for murder committed when five armed men surrounded defendant's house for the purpose of arresting him for a minor crime, none of the men being competent to serve the warrant, evidence *held* insufficient to warrant conviction.

Before Sease, J., Saluda. September, 1921. Reversed and remanded.

Elliott Culbreath, convicted of murder, appeals.

*Mr. N. G. Evans,* for appellant.

*Mr. T. C. Callison* Solicitor, for respondent, cites: *Correct definition of malice charged*: 72 S. C., 104; 39 S. C., 97; 2 Rich. 482; 14 Rich. 253; 15 S. C., 412. *Duty to obey summons of officer of the law if known to be such:* 36 S. C., 493; 2 R. C. L., 464; 84 Am. St. Rep. 696; 42 L. R. A., 682; 2 R. C. L., 464; 21 A. L. R., 179; 84 A. L. R., 669; 11 Am. Rep., 375; 5 C. J., 390, 391, 392. *Recall of jury for instructions not error*: 89 S. C., 97; 105 S. E., 749.

September 1, 1922.

The opinion of the Court was delivered by Mr. Justice Cothran.

The defendant was convicted of murder, and sentenced to death, under an indictment charging him with the murder of one W. W. Edwards. The homicide occurred under peculiar circumstances:

The defendant, a tenant of one Dorn, had given a mortgage upon his crop to one J. L. Outzs, a merchant, and was charged with having disposed of a part of his crop in violation of the statute. Outzs swore out a warrant against him before Magistrate Duffy, who, irregularly, placed it in the hands of another magistrate, named Lott, to be served. It appears that neither Duffy nor Lott formally deputized any one, sheriff or constable, to execute the warrant, but that Lott turned it over to the deceased, W. W. Edwards, who was constable for Magistrate Duffy. It does not appear that the defendant was evading arrest or could not be located at any time. On a Saturday night, shortly after the issuing of the warrant, a posse was organized, consisting of Magistrate Lott, the constable, Edwards, the prosecutor, Outzs, and two outsiders, G. W. Smith and Roy Perry. They went to the defendant's home for the purpose of arresting him, arriving there about 10:30 p. m. Lott, Outzs, and Smith stationed themselves at the front of the house; Perry went around the end of the house on the left, and Edwards on the right. The defendant was in bed asleep; his wife

and children had not retired. Outzs called to the woman to know where the defendant was, stating that the sheriff was there with a warrant for his arrest, which was not true. The defendant jumped out of bed, seized his pistol, and in his nightclothes made for the back door. There he met Edwards, who had gone around the house. When they met, shooting took place between the defendant and Edwards, the details of which are in mystery, except so far as the defendant explained them, which, of course, tended to show that Edwards opened fire on him and that he shot in self-defense. The body of Edwards was found on the ground near the back door, and the defendant escaped in his nightclothes. He was afterwards captured in Georgia and brought back for trial. Upon the trial he had not employed counsel; all of the members of the Saluda bar either having been employed for the prosecution or declining for sufficient reasons to represent him. Accordingly Hon. N. G. Evans, of the Edgefield bar, who was attending the Court upon other business, was appointed by the Court.

In an issue of life and death this Court will dispose of appeals with the greatest liberality, so far as the technical objections are concerned. There was no motion for a new trial, and the exceptions hardly conform to the strict rules; but, satisfied as we are that the circumstances of the killing do not warrant the imposition of the death sentence, we will not invoke the strictness of the rules to sustain, certainly a doubtful result. The defendant was at home with his family, and was entitled to the peace with which the law encompasses that situation; he was not evading arrest; his alleged crime was not so great an enormity as to justify a band of armed men surrounding his home at night, in the absence of any necessity for such unusual procedure. Humble in life's station as he was, the law protected his home as well as that of any other citizen. Of course, he was in his home, at night, subject to the orderly process of the law; but the circumstances properly throw light upon his mental attitude

in the matter, which is the gist of the crime of murder. He was entitled to be informed of the presence of an officer with a valid process. The prosecutor announced to the wife that the sheriff was there with a warrant for his arrest. It is conceded that this was an untruthful statement. In fact, there was not any one present authorized to arrest him. Duffy had issued the warrant and turned it over to Lott, without deputizing any one. Lott, even if he had authority to do so, had not deputized any one. Edwards had the warrant in his possession, but no one had deputized him to serve it. Where was the necessity for this band of men, not one of them authorized to make the arrest, to surround this home as if it had been that of a desperate barricaded criminal? These movements at night, under the circumstances, were well calculated to inspire in the mind of the defendant the conviction that they intended something other than a lawful arrest; it was not unnatural that he may have acted upon a different interpretation of their errand. If the defendant had been seasonably notified that an officer was there with a proper warrant for his arrest, and he had determined to resist arrest by shooting his way out, the situation would have been different; but we cannot resist the conclusion that his purpose was flight from the armed crowd rather than from the crime, and, in view of the uncertainty as to the details of the shooting, that the conviction was not warranted by the evidence.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Mr. CHIEF JUSTICE GARY, concurs.

Mr. JUSTICE MARION:

I concur in the result. I think defendant's ninth exception should be sustained. Section 45 of the Criminal Code (1912) provides that "no magistrate shall deputize the person swearing out a warrant in any case to serve the

same." If the magistrate has no such authority, the officer who has the warrant has no authority to deputize the prosecutor to take part in the arrest. There was testimony to the effect that John L. Outzs, who announced the presence of the posse and demanded the surrender of the defendant on the night of the attempted arrest was the man who issued the warrant before the magistrate. To the extent he participated in the attempt to arrest defendant, if he was the prosecutor, the attempted arrest was unlawful, and the charge was prejudicially erroneous.

MR. JUSTICE FRASER (dissenting): I cannot concur in the opinion of Mr. Justice Cothran. It seems to me to be based on the facts of the case, and this Court has no jurisdiction to determine the facts. One witness, Dock Phillips, testified:

"Live on Mark Johnson's place, two miles from El's. I know El. I remember the night Edwards was killed. I saw El at his home the evening Edwards was killed. I talked with El. What about? Not anything. It was Saturday night. El said he was looking for the sheriff, and if he did come some one would die. He was looking for the sheriff. I then drove on off. This was about two hours by sun."

It may be that the witness did not tell the truth. That was a question for the jury, in the first place. The law allows the trial Judge to grant a new trial on the facts of a case, but no such power is given to this Court. Again, the law allows the defendant to appeal to executive clemency. The jurisdiction of this Court is confined to the law of the case, and I do not find any error of law.

For these reasons, I dissent.